DANIEL L. DYSART, Judge.
| garren Sharper appeals a judgment of the Office of Workers’ Compensation holding that Sharper’s claims for workers’ compensation benefits are prescribed.[1] For the reasons that follow, we affirm.
BACKGROUND:
Darren Sharper was a professional football player employed by the New Orleans Saints during the 2009-2010 and 2010-2011 football seasons. He sustained an injury to his left knee in a game on November 8, 2009. He aggravated the injury to his left knee in a game on December 19, 2009. The team doctor recommended conservative treatment including ice, physical therapy, anti-inflammatory medications, and drainage of the knee. Sharper continued to play despite the injury. He testified that he did not play in the last, regular season game, but admitted that it was a precautionary measure in light of the upcoming play-off games.
| ⅞⅛ early January of 2010, Sharper consulted with Dr. James R. Andrews, of the Andrews Sports Medicine & Orthopaedic Clinic in Birmingham, Alabama, to obtain a second opinion about his knee injury. Dr. Andrews prescribed a Synvisc-One injection.[2] Sharper continued to play in the play-off games, and in the Saints’ victory in the 2010 Super Bowl.
At the end of the 2009-2010 season, Sharper passed an exit physical administered by the Saints’ physicians and trainers. The exit form indicated that Sharper had suffered a cervical strain in the Super Bowl,[3] and that Sharper should continue conservative treatment for his knee. The summary portion of the form indicated that “surgery” was checked, but Sharper testified that he did not know why this was checked as neither Dr. Jones (Saints’ team doctor) nor Dr. Andrews had recommended surgery at that point in time. Sharper testified that he signed the exit physical form, confirming that he had no injuries that would prevent him from playing football. Sharper testified that his knee condition worsened after the exit physical, and he consulted Dr. Andrews again on February 23, 2010.
In March 2010, Sharper’s contract with the Saints expired. He was considered a free agent at that time. On March 3, 2010, Dr. Andrews performed arthroscopic surgery on Sharper’s left knee to remove loose bodies and repair a microfracture of two small medial femoral chondral lesions. Dr. Andrews also ^performed a chondro-plasty on Sharper’s patella and injected the knee with plateletrich plasma.
*168 The Saints re-signed Sharper on May 5, 2010, for the 2010-2011 season. Sharper was still rehabilitating his knee, and was placed on the PUP (physically unable to perform) list by the Saints.[4] During this time, Sharper was paid his full salary. On October 23, 2010, Sharper was placed on the active roster and participated in the game that weekend. He continued to play although he testified that his knee continued to swell. Sharper testified that he injured his left hamstring near the end of the season, and sat out the next two games. In January 2011, he again “tweaked” his hamstring.[5]
Sharper testified that he suffered a new knee injury while playing in the game on January 8, 2011, but did not report the injury to the team doctors. He admitted that he was aware that his contract required him to report injuries or reinjuries to the team doctors.
Sharper testified that at his exit physical on January 11, 2011, he told the Saints’ staff that he still had neck, hamstring and knee issues. He did not, however, mention the alleged injury he suffered just three days earlier. Further, despite the complaints of lingering injuries, Sharper again signed the section of the exit physical form indicating that he had no injuries which would prevent him from playing football.
^Sharper became a free agent in March of 2011, but was not re-signed by the Saints. He testified that he continued to train in NFL-level training sessions. He saw Dr. Andrews or an associate at his clinic in June, July and August of 2011, receiving Synvisc shots each time. During the summer of 2011, Sharper tried out for the Denver Broncos and the New England Patriots, but was not signed by either team. Sharper testified that the reason he was not signed was because of his knee injury, but there is nothing in evidence to support his assertion that he was told by a doctor that he could not play football anymore, or that the other NFL teams did not sign him because of a knee issue. In fact, Dr. Andrews indicated in his notes from the August 2011 visit that Sharper “looks good and should be able to play this season.”
During cross-examination, Sharper admitted that he told Dr. Andrews at his July 2011 visit that he was able to “cut” and complete an entire field run. Dr. Andrews’ examination notes indicate that Sharper had full range of motion, without tenderness in his left knee. He was released to full play status. Again, at his August 2011 visit to Dr. Andrews, the clinic notes indicate that Sharper had no pain with running, no crepitus or swelling, and had full range of motion.
Sharper admitted on cross-examination that if any team had offered him a contract for the 2011-2012 season, he would have signed. However, when no offer was forthcoming, he officially retired from professional football in November 2011.
15From September 2011 to March 2012, Sharper did not actively seek employment in any field of work. It was not until June 2012 that Dr. Andrews deemed Sharper disabled from playing professional football and assigned him a permanent impairment rating of 30% in his left leg and 12% whole *169 body, and made the rating retroactive to his surgery in March 2010.[6]
DISCUSSION:
The standard of appellate review of findings of fact in workers’ compensation claims is the manifest error/clearly wrong standard. Campbell v. New Orleans Saints, 12-886, p. 5 (La.App. 5 Cir. 5/16/13), 113 So.3d 1215, 1217. However, when legal error interdicts the fact-finding process in a workers’ compensation proceeding, the de novo standard of review applies. Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp., 11-0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990, citing McFarlane v. Schneider Nat’l Bulk Camers, Inc., 07-1386, p. 3 (La.App. 4 Cir. 4/30/08), 984 So.2d 185, 188. Furthermore, interpretation of statutes in workers’ compensation claims is a question of law, which also warrants a de novo review. Id. Because we do not find that the trial court improperly applied the pertinent statutes, we review this matter using the manifest error/clearly wrong standard.
The sole issue to be decided in this appeal is whether Sharper’s claims for indemnity benefits, supplemental earnings benefits, and penalties and attorney fees | fihave prescribed, or whether, as Sharper argues, prescription was interrupted because the payments he received from the Saints were not contractual wages, but rather, workers’ compensation benefits or payments in lieu of compensation.
Sharper did not file his claim (Form 1008) for compensation until December 14, 2011, which was more than one year from the date of his last reported injury. If compensation payments had been paid, Sharper would have had one year from the date of the last indemnity payment to file a Form 1008, or three years from the date of the last disability payment.
In his two assignments of error, Sharper argues that the trial judge erred in holding that indemnity payments had not been paid, and that he was not entitled to indemnity payments when he was physically unable to play, thereby allowing the running of prescription on Sharper’s claims pursuant to La. R.S. 23:1209.[7] Both of these assignments are rooted in the trial court’s categorization of the payments made to Sharper.
Louisiana Revised Statute 23:1209 A(l) provides:
A. (1) In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties, have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter.
The party raising an exception of prescription normally bears the burden of proof at trial of the exception. However, when prescription is evident on the face |7of the pleadings, the burden shifts to the claimant to prove otherwise. See Amos v. Rooms to Go Louisiana Corp., 09-1682, pp. 3-4 (La.App. 4 Cir. 6/30/10), 43 So.3d 283, 285.
*170 The trial court determined that Sharper’s claim was prescribed on its face. It made the factual finding that Sharper was injured in the course and scope of his employment on November 8, 2009, and aggravated that injury on December 19, 2009. The court further found that Sharper filed his Form 1008 on December 14, 2011, which was not within one year from either of the injury dates as required by La. R.S. 23:1209 A(l). Therefore, based on those factual findings, the court declared that the claim had prescribed on its face for all benefits except necessary and related medical care associated with his knee injury. This finding thus shifted the burden of proof to Sharper to prove that his claim .had not prescribed.
Sharper claims that the trial court erred in finding that the record contained a joint stipulation" that the Saints did not pay indemnity or disability payments to Sharper. The trial court found that because of the stipulation, a portion of La. R.S. 1209 was inapplicable to his claim. Specifically, if indemnity or disability payments had been paid, Sharper would have had one year from the date of the last indemnity payment made, or three years from the date of the last disability payment, to file a Form 1008. Put another way, the payments in lieu of compensation would have interrupted prescription. Sharper claims that no such stipulation was.made and the payments he received were made in lieu of compensation.
We agree that no stipulation is contained in the record. However, the Saints argue that regardless of whether or not the trial court found there was a stipulation, |sSharper’s interpretation of the payments made to him is erroneous, as he was under contract for the entire 2009-2010 and 2010-2011 seasons and earned actual wages.
Paragraph 10 of the contract addresses workers’ compensation:
Any compensation paid to the player under the contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers’ compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers’ compensation benefits due player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers’ compensation, (emphasis added.)
The key word in Paragraph 10 is “entitled,” as Paragraph 10 provides that any compensation made during a period in which a player is entitled to workers’ compensation benefits will be deemed an advance payment of workers’ compensation benefits, not salary. Sharper never proved he was entitled to workers’ compensation.
The evidence establishes that Sharper missed one game as a result of the initial November 8, 2009 injury. He did not play in the last game of the regular season, but admitted that it was a precautionary measure made by the team in light of the upcoming play-off games. Sharper played in all of the post-season games, including the Super Bowl. His contract expired in March 2010, and he was considered a free agent until the Saints re-signed him on May 5, 2010. He was placed on the PUP list at the beginning of the 2010-2011 season, and was activated to participate in the October 28, 2010 game. Sharper was paid his regular salary during this time, which the trial court found was considered salary for actual |flservices rendered, pursuant to the NFL Players’ Contract and the Collec *171 tive Bargaining Agreement.[8]
This Court in Dobler v. United Fidelity & Guaranty Co., 508 So.2d 176 (La.App. 4th Cir.1987), a case factually similar to the instant case, found that payments made to a Saints player were earned payments under his contract with the NFL, rather than wages in lieu of compensation, for purposes of calculating the prescriptive period.
Conrad Dobler injured his knee in the third game of the 1978 season. He underwent surgery and his leg was placed in a cast. He was placed on the “injured reserve” list. Each morning, Dobler attended rehabilitation with the team trainer, but did not play in any other games that season. The Saints paid him all of his 1978 salary. Id. at 177.
This Court adopted the reasons assigned by the trial court finding that the case had prescribed. The Court stated:
R.S. 23:1209 provides that a claim for workman compensation benefits prescribes within one year after the accident unless the parties have agreed to payments to be made under the compensation act or unless suit is filed within one year after the accident. This section provides however that if payments are made then the limitation shall not take effect until the expiration of one year from the time of the making of the last payment except with respect to a partial disability in which case the plaintiff shall have three years from the making of the last payment. There is, however, one further caveat under this section and that is that if the injury did not result at the time of or develop immediately after the accident |10then the limitation shall not take effect until the expiration one year from the time the injury develops but in all such cases under this section the claim shall be forever void unless proceedings have been begun within two years from the date of the accident.
Dobler, 508 So.2d at 177.
Applying La.R.S. 23:1209, the Dobler court held that the payments made to Do-bler were earned wages under his contract and not payments in lieu of compensation because Dobler was required by the team and his contract to attend all practices and all team sessions and to assist in other areas the team wished for him to use his abilities. Id. at 177-178.
The Fifth Circuit was faced with a similar fact scenario in Jones v. New Orleans Saints, 01-294 (La.App. 5 Cir. 10/17/01), 800 So.2d 1025. Brian Jones injured his knee in a scrimmage prior to the start of the season. He completed the 1997 season, but was released from his contract in September of 1998, for “unsatisfactory performance.” Jones was paid, however, for the games in which he played in the early part of the 1998 season. At the end of the season (January 1999), Jones received the balance of his salary from the Saints pursuant to the NFL Collective Bargaining Agreement.
In December 1999, Jones filed a claim for compensation, stemming from the 1997 knee injury. The trial court maintained the Saints’ exception of prescription. On appeal, Jones argued that the trial court erred in not finding that the payment made in January 1999 was payment in lieu of compensation, which tolled the running *172 of prescription. The Saints countered that the payment was salary that Jones had earned.
As the Fifth Circuit explained, La. R.S. 23:1209 A determines the prescriptive period for filing workers’ compensation claims. An exception to the Ingeneral rule is that the prescriptive period does not begin to run, if benefits have been paid, until one year from the date of the last payment, or if payments were made pursuant to La. R.S. 28:1221(3), until three years from the date of making the last payment.
We find Dobler and Jones factually similar to the instant case, and agree with their holdings. Sharper was paid for the entire 2009-2010 season and was resigned after surgery for the 2010-2011 season, in which he played from October 23, 2010, through January 2011. His salary for 2010-2011 was one and a half times his salary for the prior season. Despite the fact that there were games in which he did not play, he attended practices, participated in meetings, attended games, and participated in necessary rehabilitation, all of which is considered work under the terms of his contract for which he was paid his full salary. Therefore, Sharper’s argument that his salary was a payment in lieu of compensation, rather than earned wages, cannot stand.
The trial court found that Sharper did not carry his burden of proving that the payments made to him by the Saints were advance payments of workers’ compensation benefits sufficient to trigger Article 10 of the Player’s Contract. Thus, Sharper was not entitled to any workers’ compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability, nor was he entitled to supplemental earnings benefits. The trial court found, based on the facts presented, that although Sharper could not play to the level of a professional football player from July 29, 2010 through October 23, 2010, he was still capable of performing work, which he did according to the terms of the contract. We cannot say that this finding is manifestly erroneous or clearly wrong.
| iaThe fact that the duties before and after the triggering injury are similar or dissimilar, heavier or lighter, is relevant but not determinative of the issue of whether payments made to the employee were actual wages or payments in lieu of compensation. Amos, 09-1682, pp. 4-5, 43 So.3d at 285. Here, Sharper was bound by contract to continue his other job requirements while rehabilitating without a reduction in pay. Thus, he was not entitled to workers’ compensation benefits, disability benefits, or supplemental earnings benefits.
Accordingly, Sharper’s case has prescribed as he did not file his 1008 claim until more than one year from the date of his injury.[9]
AFFIRMED

. Sharper filed a motion for new trial, which was denied by the trial court, finding the original judgment was not contrary to law, and that there were no other applicable discretionary grounds for granting a new trial.

. Synvisc-One is a treatment for pain for osteoarthritis of the knee in patients who have failed to respond adequately to conservative, non-pharmacologic therapy and simple analgesics, e.g., acetaminophen. See www. synviscone.com.

.This injury is not part of the subject workers’ compensation claim.

. In a letter dated September 5, 2010, to Sharper, Saints General Manager Mickey Loomis set forth the requirements and guidelines for a player placed on the Reserve Physically Unable to Perform list. Sharper signed for the letter on September 7, 2010, indicating that- he understood the guidelines and conditions.

. The hamstring injury also is not included in Sharper's claim.

. Dr. Andrews stated in a letter dated July 20, 2012 (written at the request of Sharper’s attorney) that Sharper was disabled from play-tag professional football and had been since his surgery in March 2010. This is in direct contradiction of Dr. Andrews notes of July 25, 2011, in which the doctor stated ”... at this point we are releasing him to try to go ahead and play if he can get signed on with one of the teams as a defensive back. Overall today he looked quite well.”

. Sharper also argues that he was erroneously denied supplemental earnings benefits, to which entitlement is also dependent on the categorization of the payments he received.

. Sharper cites to a decision of the Office of Workers’ Compensation involving another Saints player. However, this case is attached as an exhibit to Sharper's brief, and is not contained in the record before this Court. We also note that decisions of the Office of Workers’ Compensation are not binding on this Court. Therefore, we will not consider the decision. Rather, we will examine the contract for guidance.

. The trial court awarded Sharper necessary and related medical care for his treatment with Dr. Andrews, and assessed penalties and attorney fees against the Saints for failure to authorize treatment with Dr. Andrews. These issues have not been appealed by the Saints and the rulings are therefore final.